**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Greenberg Gross LLP, | No. CV-25-01176-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| GreenbergGrossLLP.com, | |
| Defendant. | |

Before the Court is Plaintiff's *ex parte* application for leave to conduct early discovery and extend the time to effectuate service. (Doc. 20.)

**I.     BACKGROUND**

Plaintiff brought this *in rem* proceeding seeking an order under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), transferring the registration of the internet domain name <GreenbergGrossLLP.com> to Plaintiff. (Doc. 6.) Plaintiff served the Summons (Doc. 11) and Amended Complaint (Doc. 6) on the registrar of the domain name, Namecheap, Inc. (Doc. 13.) After no response, the Clerk of Court entered default (Doc. 15), and Plaintiff moved for a default judgment (Doc. 17). The Court denied Plaintiff's Motion for Default Judgment because Plaintiff had served the registrar rather than the registrant of the domain name. (Doc. 19.)

The ACPA requires that Plaintiff effectuate service on the domain name registrant. 15 U.S.C. § 1125(d)(2)(A)(ii)(II). The governing statute provides:

> (2)(A) The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is

        located if--

        (i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and

        (ii) the court finds that the owner--

        (I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

        *(II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by--*

        *(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and*

        *(bb) publishing notice of the action as the court may direct promptly after filing the action.*

        (B) The actions under subparagraph (A)(ii) shall constitute service of process.

*Id.* (emphasis added).

    At the outset of this case and at the time Plaintiff moved for default judgment, the contact information of the registrant, Diverse ISP, was publicly listed by Whois, a company that provides public information about domain registrations. (Docs. 1-2, 17-1 at 21-22.) That contact information provided Diverse ISP's email address, mailing address, and phone. (*Id.*) On September 9, 2025, the publicly listed contact information for the registrant was anonymized using a domain privacy service called Withheld for Privacy that partners with the registrar, Namecheap. (Doc. 20 at 3.) Withheld for Privacy redacts the name of registrants and replaces registrants' mailing address and phone number with Withheld for Privacy's address and phone number, which are based in Iceland. (Doc. 20-12.) Withheld for Privacy provides registrants with an anonymized, unique email address. (*Id.*)

    On October 21, 2025, Plaintiff contacted Namecheap to inquire whether the registrant's identity remained the same, but Namecheap refused to disclose that information absent a court order or subpoena. (Docs. 20-13, 20-14.) Plaintiff now requests leave to conduct early discovery to obtain the unredacted contact information of the domain

name registrant, namely by serving a subpoena on Namecheap requesting the registrant's contact information. (Docs. 20, 20-15.)

## II.  DISCUSSION

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order." Fed. R. Civ. P. 26(d)(1). The general rule is that "discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999). But courts have broad discretion to manage discovery. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Where the defendants' identities are unknown "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citations omitted).

Courts look to whether there is good cause to authorize early discovery. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). To determine whether there is "good cause," courts consider the following factors:

> (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible.

*OpenMind Solutions, Inc. v. Does 1-39*, No. 11-3311, 2011 WL 4715200, at *2 (N.D. Cal. Oct. 7, 2011) (citing *Columbia Ins. Co.*, 185 F.R.D. at 578-80). Courts also look to whether the conventional standard for good cause is satisfied. *See UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 WL 4104214, at *4 (N.D. Cal. Sept. 3, 2008) (citation omitted).

### A.     Identification of the Unknown Party

"[T]he Court must examine whether Plaintiff has identified the Defendants with sufficient specificity, demonstrating that each Defendant is a real person or entity who would be subject to jurisdiction in this Court." *Pac. Century Int'l, Ltd. v. Does 1-48*, No. 11-3823, 2011 WL 4725243, at *2 (N.D. Cal. Oct. 7, 2011) (citation omitted). This is an *in rem* proceeding, so the person or entity Plaintiff is attempting to serve is not a party. Still, Plaintiff has specifically identified a real person or identity, the registrant of the domain name. (Doc. 20.) The registrant may be sued in federal court because Plaintiff's claim arises under federal law, namely the ACPA. (Doc. 6.) The first element is satisfied.

### B.     Efforts to Identify the Unknown Party

Plaintiff must identify all steps taken to locate the registrant. *Columbia Ins. Co.*, 185 F.R.D. at 579. "This element is aimed at ensuring that plaintiffs make a good faith effort to comply with the requirements of service of process and specifically identifying defendants." *Id*. Plaintiff has taken and set forth the steps it took to identify the registrant of the domain name.

First, Plaintiff attempted to identify the appropriate contact information for Diverse ISP, the originally listed registrant. On October 16, 2025, Plaintiff's counsel sent a letter (the "Notice Letter") to Diverse ISP, notifying it of the alleged cybersquatting violation and of this pending action. (Docs. 20-2, 20-3.) The Notice Letter was sent to the postal address that Diverse ISP provided to Namecheap. (*Id.*) The Notice Letter reached Ghana, but USPS tracking information for the Notice Letter states, "Item being held, addressee being notified." (Doc. 20-3.) A copy of that Notice Letter was sent to the email address that Diverse ISP provided to Namecheap and published online. (Doc. 20-4.)

Plaintiff conducted web searches to find contact information associated with Diverse ISP. (Doc. 20 at 5.) Plaintiff found directory listings for Diverse ISP, which included the same phone number that was originally listed as associated with Diverse ISP, but the email address was different. (*Id.* at 6.) Plaintiff emailed a copy of the Notice Letter to the newly located email, but Microsoft Outlook reported that the email was

"Undeliverable" because "the recipient's domain does not exist." (Doc. 20-4.) Plaintiff also attempted to call Diverse ISP multiple times at the phone number provided in both the directory and registrant information listed by Whois. (Doc. 20-1 ¶¶ 8-9.) The number was invalid. (*Id.*) Plaintiff also attempted to access Diverse ISP's website, <www.diverseisp.com>. (*Id.* ¶ 10.)

Then, after the registrant's information was anonymized via Withheld for Privacy, Plaintiff's counsel sent a copy of the Notice Letter to the anonymized email address listed on Whois for the domain name. (*Id.* ¶ 11.) Microsoft Outlook reported that the email was delivered. (*Id.*) Plaintiff's counsel sent secured links of the PDF files for the Summons (Doc. 11) and Amended Complaint (Doc. 6) to the anonymized email address. (Doc. 20-1 ¶ 12.) The NetDocuments service through which the links were sent provided confirmation of delivery. (Doc. 20-10.)

With the information available to it, Plaintiff has diligently pursued identification of the registrant of the domain name. There are no other means to identify the registrant, so Plaintiff has satisfied this element.

    **C.**    **Withstanding a Motion to Dismiss**

Plaintiff must demonstrate that the complaint would withstand a motion to dismiss. *Columbia Ins. Co.*, 185 F.R.D. at 579. The ACPA requires Plaintiff to establish that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (citing 15 U.S.C. § 1125(d)(1)(A)) (internal quotation marks omitted).

    **1.**    **Registration, Trafficking, or Use**

The first element is satisfied. The unknown registrant that Plaintiff is trying to serve registered the domain name at issue.

    **2.**    **Identical or Confusingly Similar to Protected Mark**

"In determining whether there is confusing similarity under the ACPA, courts

compare the plaintiff's mark with the name of the website." *Super-Krete Int'l, Inc. v. Sadleir*, 712 F.Supp.2d 1023, 1031 (C.D. Cal. 2010). Importantly, "[a] court should not look beyond the domain name to consider the content of the website." *Id.*

Plaintiff has operated a law firm named Greenberg Gross, LLP with numerous offices since March 2013. (Doc. 6 ¶ 3.) The domain name, <GreenbergGrossLLP.com>, registered in 2024 (*Id.* ¶ 8), is identical to the name Greenberg Gross, LLP. The second element is met.

### 3. Bad Faith Intent to Profit

"Congress has enumerated nine nonexclusive factors for courts to consider in determining whether bad faith exists." *Lahoti v. VeriCheck Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009) (citing 15 U.S.C. § 1125(d)(1)(B)(i)). The Court "need not, however, march through the nine factors seriatim because the ACPA itself notes that use of the listed criteria is permissive. Instead, the most important grounds for finding bad faith are the unique circumstances of the case." *Id.* (citation modified); *see also* 15 U.S.C. § 1125(d)(1)(B)(i) (stating that "a court *may* consider" the provided factors "but [are] not limited to" them). Here, the pertinent factors supplied by the ACPA for determining whether the registrant has a bad faith intent are as follows:

> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

15 U.S.C. § 1125(d)(1)(B)(i).

Plaintiff alleges that the domain name website "was using an exact copy of certain webpages from [Plaintiff's] legitimate website, as they existed on Plaintiff's website at that time, except that they changed the contact information . . . to false contact information which is no[t] owned or controlled by Plaintiff." (Doc. 6 ¶ 6.) Plaintiff also alleges that the

- 6 -

registration of the domain name "was made in a bad faith effort to confuse the public and to attempt to profit from the sale of the infringing domain name to the Plaintiff, the only entity that would have any legitimate use for that domain name." (*Id.* ¶ 9.) And finally, Plaintiff alleges that the "infringing domain name was registered in bad faith with the intent to obtain a profit by confusion of the infringing domain name with the name of Plaintiff." (*Id.* ¶ 12.) All of these allegations directly speak to the ACPA's factors for determining whether bad faith exists, and Plaintiff has sufficiently pled that the registrant had no bona fide use and instead intended to confuse the public. Plaintiff has made a sufficient showing that the suit would survive a motion to dismiss.

### 4. Reasonable Likelihood of Identification Through Discovery

If the other factors are satisfied, early discovery is permitted "unless it is clear that discovery would not uncover the identities." *Gillespie*, 629 F.2d at 642-43. Plaintiff requests leave to serve a subpoena on Namecheap to obtain the registrants contact information. (Doc. 20.) The registrar, Namecheap, partners with Withheld for Privacy to provide registrants anonymization of their contact information. (Doc. 20-12.) Namecheap advertises that the "domain privacy service provider does not require [a registrant's] personal information to work. Any details [a registrant] share[s] with Namecheap will remain with [Namecheap]." (*Id.*) A subpoena directed toward Namecheap for the registrant's contact information is likely to uncover the registrant's identity because Namecheap possesses the registrant's information, as described in Namecheap's advertising.

### 5. Good Cause

In addition to the four factors above, courts look to whether the conventional standard for good cause is satisfied. *See Semitool*, 208 F.R.D. at 276. "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*

Namecheap advised Plaintiff that Plaintiff would need a court order or subpoena compelling Namecheap's disclosure of the registrant's contact information, so a subpoena

would not unfairly surprise Namecheap. (Docs. 20-13 ¶ 16, 20-14). The subpoena is narrowly tailored and would impose a small burden on Namecheap, which would be compelled to disclose only the contact information of the registrant. (Doc. 20-15.) That information should be readily ascertainable. Good cause exists to allow Plaintiff to conduct early discovery.

### III.   CONCLUSION

Having considered Plaintiff's application, and good cause appearing,

**IT IS ORDERED** that Plaintiff's application (Doc. 20) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff is permitted to serve a subpoena upon the registrar Namecheap, Inc. to obtain the unredacted contact information for the registrant of the internet domain name <GreenbergGrossLLP.com>.

**IT IS FINALLY ORDERED** that Plaintiff must effectuate service of process upon the registrant of the domain name <GreenbergGrossLLP.com> no later than **February 10, 2026**.

Dated this 12th day of November, 2025.

Michael T. Liburdi
United States District Judge