**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Greenberg Gross LLP,

Plaintiff,

v.

GreenbergGrossLLP.com,

Defendant.

No. CV-25-01176-PHX-MTL

**ORDER**

Before the Court is Plaintiff Greenberg Gross, LLP's *Ex Parte* Motion for Issuance of an Order to Show Cause against non-party Namecheap, Inc. (Doc. 33).

**I.**

Plaintiff initiated this *in rem* action on April 8, 2025, against the internet domain name <GreenbergGrossLLP.com> (the "Domain Name") under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). (Doc. 1.) Plaintiff amended its Complaint and served it on Namecheap, the Domain Name's registrar, on April 23, 2025. (Docs. 6, 13.) On May 20, 2025, Plaintiff applied for default against the Domain Name, which the Clerk of Court entered. (Docs. 14, 15.) Plaintiff moved for default judgment on July 10, 2025, but the Court denied the motion and set aside the default because Plaintiff failed to serve the Domain Name's registrant, as required by the ACPA. (Docs. 17, 19.)

From the outset of this case and until July 31, 2025, the Domain Name's registrant was Diverse ISP, and its contact information was publicly listed by Whois, a company that provides public information about domain names. (Doc. 1-2.) But on September 9, 2025,

the Domain Name's registrant information was anonymized by Withheld for Privacy, a domain privacy service partnered with Namecheap. (Doc. 20-13.) On October 21, 2025, Plaintiff asked Namecheap for the un-anonymized information, which Namecheap refused to supply absent a court order or subpoena. (*Id.*; Doc. 20-14.)

On November 10, 2025, Plaintiff filed an *ex parte* application for early discovery so that it could subpoena Namecheap for the name of the Domain Name's new registrant. (Doc. 20.) The Court granted the application on November 13, 2025, and Plaintiff subpoenaed Namecheap the next day. (Docs. 24, 25-9, 25-10, 25-11.) Namecheap complied on December 8, 2025, providing the name and contact information of the new registrant, Belvana Sela. (Doc. 25-12.) Plaintiff sent the new registrant notice of the alleged violation on December 10, 2025, and filed an *ex parte* application asking the Court for a waiver of the ACPA's service by publication requirement and entry of default on January 14, 2026. (Docs. 25, 25-13, 25-14, 25-15.) The Court granted the application and the Clerk of Court entered default against the Domain Name on February 12, 2026. (Docs. 29, 30.)

On February 17, 2026, Plaintiff sent Namecheap this Court's Order and the entry of default and asked it to transfer the Domain Name to Plaintiff, which it eventually did on April 14, 2026. (Doc. 33-3; Doc. 33-5; Doc. 33-1 ¶ 19.) Plaintiff also asked Namecheap to reimburse it for its reasonable costs and fees incurred to secure the Domain Name after Plaintiff's October 21, 2025, email seeking the un-anonymized information of the second registrant. (Doc. 33-3.) Namecheap refused. (Doc. 33-16.)

Plaintiff now seeks this Court's intervention to recover its attorneys' fees and costs incurred in litigating the dispute with Namecheap. (Doc. 33.) Plaintiff filed this *ex parte* motion asking the Court to issue an order requiring Namecheap to appear and show cause as to why it did not violate the ACPA and why it should not be ordered to reimburse Plaintiff for its reasonable costs and fees. (*Id.*)

**II.**

"[A] court may impose attorneys' fees against a non-party as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices." *Corder v.*

*Howard Johsnon & Co.*, 53 F.3d 225, 232 (9th Cir. 1994). "In addition, a court may impose attorney's fees to sanction a non-party whose actions or omissions cause the parties to incur additional expenses." *Id.* at 232.

"Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark" the ACPA mandates the "domain name registrar [not] transfer, suspend, or otherwise modify the domain name during pendency of the action." 15 U.S.C. § 1125(d)(2)(D). The ACPA further provides that the domain name registrar "shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard." 15 U.S.C. § 1125(d)(2)(D)(ii).

**III.**

The Court will grant Plaintiff's Motion for Issuance of an Order to Show Cause (Doc. 33) because Plaintiff has presented ample evidence that Namecheap violated its obligations under the ACPA.

Plaintiff notified Namecheap of this action and therefore subjected it to the ACPA's requirement that Namecheap not transfer, suspend, or otherwise modify the Domain Name. Namely, Plaintiff served Namecheap with a copy of its Amended Complaint on April 23, 2025. (Doc. 33 at 11; Doc. 13.)

Plaintiff also presents evidence that Namecheap violated the ACPA's requirement that a domain registrar not to "transfer, suspend, or otherwise modify the domain name during pendency of the action." 15 U.S.C. § 1125(d)(2)(D). When this action was filed, the Domain Name's registrant was Diverse ISP; on July 31, 2025, that registration lapsed; and on September 9, 2025, Namecheap registered the Domain Name to Belvana Sela. (Doc. 33-3.)

Finally, Plaintiff advances evidence that Namecheap acted in bad faith or reckless disregard. *See* 15 U.S.C. § 1125(d)(2)(D)(ii) (prohibiting injunctive or monetary relief against a domain name registrar absent a showing of bad faith or reckless disregard). Despite service on Namecheap of numerous court filings over the course of several months and Plaintiff's emails apprising it of Plaintiff's assertion that it was in violation of the

ACPA, Namecheap permitted the second registrant to anonymize its contact information. This suggests that Namecheap knew of this pending action as well as its obligations under the ACPA and chose to disregard them.

The Court will therefore order Namecheap to explain why it should not be ordered to reimburse Plaintiff's attorneys' fees and costs incurred as a result of Namecheap's noncompliance. In its response, Namecheap must address Plaintiff's assertions that its conduct violated the ACPA and did so in bad faith or with reckless disregard. And because, under these circumstances, the Court's power to award attorneys' fees and costs is derived only from its inherent authority to sanction, Plaintiff and Namecheap must address why the Court should or should not invoke its discretionary authority. *See* 15 U.S.C. § 1125(d)(2)(D)(ii) (limiting, but not granting, the Court's power to award monetary relief against a domain name registrar). *But see Corder*, 53 F.3d at 232 ("[A] court may impose attorney's fees to sanction a non-party whose actions or omissions cause the parties to incur additional expenses.").

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Issuance of an Order to Show Cause (Doc. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that non-party Namecheap, Inc. must show cause, in writing, no later than **October 12, 2026**, why the Court should not impose a sanction, requiring it to reimburse Plaintiff for attorneys' fees and costs incurred by Plaintiff as a result of its purported noncompliance with the ACPA. Namecheap's response must not exceed 10 pages.

**IT IS FURTHER ORDERED** that Plaintiff must file a reply no later than **October 19, 2026**. Plaintiff's reply must not exceed 10 pages.

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS FINALLY ORDERED** that Plaintiff must immediately serve this Order on Namecheap. Plaintiff must file proof of service no later than **October 2, 2026**.

Dated this 28th day of September, 2026.

Michael T. Liburdi
United States District Judge